And we will move on to our final case for today, for this morning, which is Lee against Parshall. Mr. Casper. Thank you, Your Honors. Ms. Davis. This case kind of goes to the, actually goes to the fundamentals of the jury system. The substance of Wadir is the right to a fair and impartial jury as guaranteed by the Fifth and Seventh Amendments of the U.S. Constitution. The Feitzer case, if I'm saying that correctly, to me, is the case that indicates what Wadir is appropriate in this circuit and as interpreting U.S. Supreme Court law. This case is not- Is it your position that only, that the process can only be acceptable if the attorneys rather than the judge conduct Wadir questioning? I think, I think it's a huge problem to have a judge in an instance like this, especially where there is race and other nuanced, other nuanced issues in a case, to not allow the lawyers to do Wadir. I think it's a huge problem. And again, it sort of goes to the fundamental of our justice system. I mean, if we really think judges are this great at doing this, why don't we have them question all the witnesses, do the opening and closing statements and everything else? How do you get around Federal Rule of Civil Procedure 47A that specifically provides that judges can ask Wadir questions? Oh, I think the judge is allowed to ask questions. I don't think that they should be the only person asking questions. And secondly, in this case, specifically in this case, the Fifth and Seventh Amendments of the U.S. Constitution require that the judge ask, ask fair and reasonable questions to get at the issues of race in this case, and that did not happen. Well, that's it. That's a jump. I mean, obviously the Seventh Amendment guarantees a right to trial by jury. The Fifth Amendment has a due process clause. But to jump from that to say that in the face of the permission in Rule 47A to have either counsel or the court handle a Wadir, to say that that means that the court can't be the only person questioning, I don't see that link. And as a matter of fact, as you well know, probably practice in federal courts is much more inclined to show the judges invite possible questions from counsel, of course, as Judge Conley did here. But it's really more the state courts where the lawyers are themselves the questioners. And Judge Conley gave some very good reasons for thinking that he was actually adopting a process that was more protective of civil rights. I disagree with that, especially with respect to the questions on race. I mean, there's two questions asked on race. That is insufficient. I mean, that's like saying that you raise your hand and ask the question, how many people here are prejudiced against black people? Who's going to raise their hand to that? This is a much more nuanced and a much more difficult area of inquiry. And had he asked the questions that I had asked, I probably wouldn't. But you did have jurors respond to that question. Just because one juror responded doesn't mean that they're... There were two separate jurors who responded. You just said you can't expect that a question like that, that jurors are going to feel comfortable responding. Jurors did feel comfortable responding and they did respond. One or two did out of 30. You're right. How am I supposed to guess as the lawyer who's entitled to make both peremptory challenges and challenges to cause what the other 28 are thinking on these closed-ended questions? It's just inappropriate. Well, if they don't respond, you're assuming they have something and they're hiding it. That's not the way this works. And you can watch them during the question. You can look at their demeanor. I mean, there are a lot of other ways for the jurors who may not raise their hand that, as an experienced trial lawyer, lawyers know you watch those other indications and then follow up on them. And you make a good point, Judge, because in the Feitzer case at 284, this court says exactly that. Manners of bias or prejudice may be sensed without the possibility of proof. But if the questions aren't asked, if open-ended questions aren't asked on matters of race, police and crime, and I mean open-ended questions, and if you aren't nuanced enough to get around to the sides of these questions, such as the 10 questions that I asked the judge to give here... There's no law that requires judges to ask specific questions that are submitted by lawyers. You're absolutely right, but it still has to be fair and reasonable, and it's no different than me going in front of a jury to argue what's a negligence or not negligence, because the jury determines what's fair and reasonable, and you determine what's fair and reasonable. And, you know, I took this case pro bono to argue this case and handle it, and if I can't get in front of a jury and make sure that I have a fair and impartial jury on issues such as this, why would I do this anymore? What reason is there to think that this was not a fair and impartial jury? Judge Conley didn't ask quite as you had worded the questions, but he covers the substance. He wants to know, you know, who's been a victim of a crime, you know, what does that mean? He lets them come up at sidebar if they're embarrassed to say something in front of the group as a whole. It's a heavy lift to say that his questions didn't adequately cover the waterfront. He excuses some people based on answers for cause, which is great, because that means you haven't wasted a peremptory. Two questions on race, Your Honor. Would anyone find it difficult to serve as an impartial juror in a case in which an African-American man is accusing a white police officer of excessive force? Question one. Second question, have you or someone you know ever been discriminated against because of race, ethnic background, gender, religion, or sexual property? And we got a response from that. I think it was Juror Cohn. Somebody says, well, yes, when I go to high-end clothing stores, people tail me. Sure, absolutely. What's wrong with the questions that I ask them to ask? And why doesn't that elicit more information that gives me adequate information to make both my peremptory strikes and strikes for cause? Tell me about the contacts you've had with African-American people in your life or in your personal life. What kind of contact do you have with people of races other than your own? Or what is the racial composition of your neighborhood, your kids, your school's workplace? How much of a problem do you think racial discrimination is today? But again, you're saying that courts should just automatically accept. Those may be perfectly fine questions, but there's nothing that says a court has to ask them. And you said the court asked two questions about race. The court had a very detailed question explaining that, which is not one of the two you're identifying, I don't believe, explaining that the plaintiff was African-American, the defendant was a white police officer, and spent some time talking about the problems that that has raised in history, and then went on to ask if anybody was predisposed or would have any discomfort or the inability to be fair given the factual circumstances. That went quite a bit further than some of your questioning. That was an explanation, not a question. And again, until you can elicit responses from jurors in these types of... If you're comfortable, you can listen to the evidence and decide it based on the evidence, then that's fine. But if not, this would be the time to raise your hand. That asks for a response. That's how he ended that particular explanation, as you call it. Right. It's still a closed-ended question that is problematic in these instances. And I don't know why a judge would ever want to take the responsibility of doing voir dire, frankly. Just as Marshall talked about, and I put that in my brief, about the fact that why don't we take a little more time and do voir dire so that we're sure we're getting a fair jury? And if we're not doing that, what it means is we're calling the entire justice system into question. And I think that's the problem with this here. This isn't an auto accident case. You have bias and prejudices all over the map with this case, with race, with police, with crime, especially in today's internet and media age. This is not an auto accident case. This is not a slip and fall case. This is a case where a seasoned lawyer should be able to ask questions to get an unbiased and fair jury so that we can get an unbiased and fair jury. And it meets the constitutional requirements. You might want to save the rest of your time if you want a little rebuttal. Yes, Your Honor. Thanks. Ms. Davis. Good morning, Your Honors, and may it please the court. This case boils down to a district court's broad discretion to conduct voir dire and to exclude evidentiary matters. Now, Mr. Lee's appeal presents two questions. The first relates to whether the district court abused its discretion in conducting voir dire on the issues of police, race, and crime. The second question is whether the district court abused its discretion in excluding other acts of evidence of a subsequent lawsuit that was filed against Officer Partial that did not involve Mr. Lee and was ultimately settled. First, I'll turn to the issue of voir dire. It is clear that district courts have very broad discretion to conduct voir dire, and this court reviews that conduct for an abuse of discretion. Here, the record shows that the district court went well beyond what it was required to do in showing on the record how it exercised its discretion. So, I'm just going to put a little footnote there. I mean, there's some much earlier cases, Ham, for example, that seemed to indicate that a pretty cursory inquiry is enough. But my reaction to that is that was then, this is now, and that this is a topic very much on many people's minds, very much in their experience. And so, I certainly agree with you that crafting the voir dire, first of all, the judge can decide. I, the judge, am going to do this. I'll decide which of your proposed questions I'm going to use. Maybe I'll combine them, handle it a different way. There's a lot of discretion there, so that's fine. But I'm not sure that Judge Conley overdid it. You know, I think that what he did, maybe for this type of case, was a very sound exercise of discretion and not bending over backwards. Your Honor, I believe that the reasoning that Judge Conley exercised was very clearly reflected on the record. And his reasoning on the record is what I was suggesting went above and beyond. You know, he reviewed and considered the questions that were posed by Mr. Lee. In fact, there were written submissions by both parties with respect to these questions. He heard oral arguments at both pretrial conferences and again at a sidebar during trial. And he indicated that he indeed would ask questions on the topics of police, race, and crime, just not in the format requested by Mr. Lee. And Mr. Lee's counsel suggests today that he is entitled to some type of open-ended questions on these issues. And that is not the case. And in fact, this Court has found in Jones and also in Hastings that open-ended questions are not required. General, direct questions that sufficiently probe into potential jurist bias is sufficient. And here, the District Court properly exercised its discretion in excluding many of the questions that were posed by Mr. Lee. For example, Mr. Lee wanted questions on the issue of race, such as, what sorts of negative or derogatory comments about African-American people have you heard over the years? Or if you were a parent of a young African-American today, what concerns would you have for him about how our society is likely to treat him? The District Court conducted a very careful balance between inquiring into these issues of police, race, and crime so that both counsel could intelligently exercise their challenges. But he also had to balance that against Officer Partial's rights and not inflaming the jury, as the District Court noted some of Mr. Lee's questions would do, or not cross-fertilizing prejudice by asking some of these open-ended questions. For example, another proposed question is, do you have an opinion about what is more important, law and order or preserving everyone's constitutional rights? The questions that Mr. Lee proposed would have invited the jury to rule in Mr. Lee's favor based on sympathy. These questions suggest that African-American men are over-incarcerated, that society treats African men poorly, that police misconduct is an issue that must be addressed. And so the District Court took into account not only Mr. Lee's concerns, but balanced that against the rights that Officer Partial has in conducting voir dire in a fair manner in order to identify an impartial jury. And that is exactly what was done here. The record shows that the court was concerned with inflaming the jury, with cross-prejudicing the jury, but the District Court ultimately agreed that these are areas that the court should inquire about to potential jurists. How many jurors did they use in the Western District of Wisconsin in a civil case like this? I believe there were nine jurors. Nine? I'm not certain on that number. And at least one of them was African-American. Do you know how many? There was one African-American juror that was on the initial panel, and she was not objected to by either party and ultimately served on the jury that decided Lee's claim. And was she the only African-American on that panel that could have been selected for the jury that was African-American? She was the only one in the voir dire? Correct. Were there 30 initially that came in? I believe there were about 34. I'm not certain. With respect to the African-American juror, Ms. Cone, that was selected for the jury, it's very important to note, as this court already pointed out, that she provided a very real, raw account of the discrimination that she faces as an subject to discriminatory surveillance when she goes into a department store to shop. And this account that was given in open court certainly underscored the need for other jurists to explore their potential implicit and explicit biases and notify the court, if anything, would prohibit them from deciding Mr. Lee's claim impartially. Now, these district court questions sufficiently probed into racial bias, as this court has required in Jones and in Hastings. It is important to note, though, that the questions into racial bias went far beyond two perfunctory, closed-ended questions like Mr. Lee suggests. And Judge St. Eve, I believe that you pointed that out. The district court clearly gave an overview of the racial bias and sensitive issues that occur. The district court took Mr. Lee's suggestion to probe into implicit bias and did so. And we can tell that this— He at least alerts them to the fact that there is this thing called implicit bias. I'm not sure he probes it so much, but he puts it on the table. Absolutely, Your Honor. And Judge Conley noted that it's very difficult to extract information on implicit bias and noted this during the pretrial conference, that he would attempt to do so, but most of us who have implicit biases are not even aware that we do based on their implicit nature. We see that the panelists provided information in response to the questions by the district court. These responses were more than sufficient to allow counsel to intelligently exercise their challenges, their preemptory challenges to potential jury members. Not only does Mr. Lee complain today about the types of questions that were asked, he also complains about who asked the questions. And as Judge St. Eve noted, Rule 47 of the federal rules requires that district courts have the discretion to allow counsel to ask questions. Well, this is the word may. Correct. May be either way. And that is exactly what the district court did here. It invited counsel to ask any additional follow-up questions on these issues at sidebar. In my remaining time, I'll turn briefly to the next issue, which is the district court's exclusion of other acts evidence. Here, too, the district court has very broad discretion, which it did not abuse in precluding Lee's pro-offered evidence of a subsequent lawsuit that was filed against Officer Partial that did not involve Lee that was ultimately settled and for which Officer Partial denied any liability. The district court properly exercised its discretion. It provided a written opinion on this issue. It did allow additional argument at the pretrial conferences. It provided, again, its reasoning on the record at the pretrial conferences and indicated that there was no permissible purpose for this type of evidence under 404B. Further, it was overly prejudicial under Rule 403. And looking at Lee's appeal on this issue today, even if Lee could prove a permissible purpose for the admission of such evidence, he does not show that the admission of such evidence would have changed the outcome of trial, which is required by this court in reviewing evidentiary decisions. Rather, this evidence was pro-offered in an attempt to argue that Officer Partial had a propensity to use excessive force because there was a second excessive force claim brought against him. This is exactly the type of evidence that Rule 404 is intended to exclude. In conclusion, this court should deny Mr. Lee's request for a new trial. The district court properly exercised its discretion. Mr. Lee had the opportunity to select an impartial panel to present his case at trial, and although the jury ultimately did not believe him, his verdict should stand. Thank you. Thank you. Anything further, Mr. Kasper? All are agreed to be adjourned. I would just say, of course, they think that the voir dire was fair because every one of the biases in this instance was against my client. He's black, he's incarcerated, been convicted of crimes, and law enforcement, and they have a law enforcement officer. I'm going to go with what Justice Marshall said. It may be that permitting slightly more extensive voir dire examination will put an additional burden on the administration of justice. As Chief Justice Hughes argued 40 years ago, it would be far more injurious to permit it to be thought that persons that are attaining a disqualifying prejudice were allowed to serve as jurors, and that inquiries designed to elicit the fact of disqualification were barred. No sure way could be devised to bring the processes of justice into disrepute. The last thing I'll say is, Justice O'Connor said in the Derringer case, and this gets to what you were asking about earlier, Judge, an individual juror may have an interest in concealing his own bias or may be unaware of it. Natural human pride would suggest a negative answer to whether there was a reason a juror could not be fair and impartial. That's precisely what these cross-examination type questions that Judge Conley gave the potential jurors did and does, and that's why lawyers ought to be allowed to ask these questions and or he asked. All right, well thank you very much. Thanks to both counsel. The court will take this case under advisement and we will be in recess.